## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**KEITH D. DECKER, and
PAULA E. DECKER,**

Case No. **05-64945-13**

Debtors.

# MEMORANDUM OF DECISION

At Butte in said District this 14th day of December, 2007.

Pending in this Chapter 13 case[1] Charles E. Hansberry ("Hansberry") of Garlington, Lohn & Robinson, PLLP ("the Garlington firm"), attorneys for secured creditor Deutsche Bank National Trust Company as trustee for Long Beach Mortgage Loan Trust 2001-2 ("Deutsche Bank"), filed an Application for Professional Fees and Costs ("Application") on June 27, 2007, (Doc. No. 98) requesting an award of attorney fees in the amount of $35,529.25 and costs in the amount of $4,582.28. Debtors filed an objection and the Application first was set for hearing at Missoula on August 16, 2007. Hansberry appeared in support of the Application and Debtors were represented by attorney R. Clifton CAughron ("Caughron") in opposition. No testimony or exhibits were admitted. The Court granted the parties time to file additional briefs, which have

---

[1]This case was dismissed on October 2, 2007, when Debtors failed to file a response to the Chapter 13 Trustee's motion to dismiss, while the instant Application was pending. The dismissal was vacated with the Trustee's consent after hearing by Order entered on November 13, 2007, reinstating the case and Deutsche Bank's Application.

1

been filed and reviewed by the Court, together with the record and applicable law. The matter is ready for decision. This memorandum contains the Court's findings of fact and conclusions of law.

This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(a). Deutsche Bank's Application for compensation is a core proceeding under 28 U.S.C. § 57(b)(2)(B) and (O).

## BACKGROUND FACTS & PROCEDURAL HISTORY

Deckers signed a promissory note ("note") to Long Beach Mortgage Company dated February 13, 2001, in the principal amount of $85,000.00[2]. The note provides at paragraph 7(E) on page 2 that if the borrowers default the note holder "will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees."

The deed of trust, signed by Deckers on February 13, 2001, grants as security Deckers' residence at 620 Hoffman Draw Rd. in Kila, Montana. Paragraph 7 of the deed of trust provides that if the borrower fails to perform, "or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy . . .), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property . . ., including paying reasonable attorney fees...." Any such amounts disbursed would become additional debt of Borrower secured by the deed of trust. Paragraph 21 of the deed of trust, "Acceleration; Remedies", also provides for Lender to collect expenses including

---

[2]The note and deed of trust are attached to Proof of Claim No. 6 as Ex. A and B, respectively.

2

reasonable attorney fees in exercising its remedies.

This case commenced on October 14, 2005, when Debtors filed their Chapter 13 petition. They filed their Schedules, Statements and Plan on October 31, 2005. Schedules A and D show that the first mortgage debt, listed as Washington Mutual Bank ("Washington Mutual"), against their residence is oversecured and the residence was valued at $250,000.00. The Plan listed Washington Mutual as having an unimpaired secured claim, and an arrearage of $41,635.00. The Plan proposed that Debtors would sell or refinance their residence and pay the proceeds to the Chapter 13 Trustee for distribution.

Debtors amended their Schedules and Plan on December 7, 2005, and raised the value of their residence on Schedule A to $254,000.00. Schedule D was amended to remove Washington Mutual's secured claim. Washington Mutual's unimpaired claim and arrearage were omitted from the first amended Plan (Doc. No. 14). Washington Mutual filed Proof of Claim No. 4 on December 22, 2005, stating a secured (and priority claim) secured by real estate in the amount of $150,372.32, value of the collateral as $185,000 and an arrearage of $59,072.28.

Debtors filed a complaint in Adv. No. 06-00002 on January 6, 2006, seeking judgment against Washington Mutual, Long Beach Mortgage Company and Deutsche Bank based on theories of fraud, recoupment, violations of the Federal Truth in Lending Act ("TILA"), unconscionable contract and usury, and requesting damages including rescission of the note and deed of trust securing their residence. Deutsche Bank as defendant filed an answer, and filed a motion for summary judgment, followed by a second motion for summary judgment.

In the main case, objections to confirmation were filed by the Chapter 13 Trustee and by Washington Mutual, and after a hearing the Court denied confirmation of Debtors' first amended

Plan by Order entered on March 13, 2006. Debtors filed an objection to Washington Mutual's Proof of Claim on March 15, 2006, and filed an amended Plan on March 15, 2006, and filed further amended Plans on March 28, 2006, and April 10, 2006. At a hearing on confirmation held on April 13, 2006, the Trustee and counsel[3] for Washington Mutual consented[4] to confirmation, and Debtor's objection to Washington Mutual's Proof of Claim was taken up with Adv. No. 06-00002. The Court entered an Order on April 17, 2006 (Doc. No. 50) providing that Debtors' objection to Washington Mutual's Proof of Claim would be heard and determined in conjunction with trial of Adv. No. 06-00002. The Court confirmed Debtors' Plan by Order entered on June 6, 2006, according to the terms of which Debtors were to make payments to Washington Mutual outside of the Plan and refinance their home within 18 months. Debtors moved to modify the confirmed Plan on September 1, 2006, to reduce their plan payment. The Trustee consented and the modified Plan was confirmed on October 4, 2006.

On February 6, 2007, the Court entered a Memorandum of Decision, Order and Judgment granting Deutsche Bank's first motion for summary judgment and dismissing Adv. No. 06-00002 with prejudice. The findings and conclusions are set forth in the Memorandum of Decision, Doc. No. 57, in which the Court applied the doctrine of claim preclusion based upon the "General Rule of Bar" and the "General Rule Concerning Splitting" from a prior adversary proceeding involving the same parties, Adv. No. 04-00128[5], to reject the Debtors' new legal theories raised

---

[3]Attorney Matthew J. Kolling of Mackoff, Kellogg Law Firm of Dickinson, North Dakota, appeared at the hearing for Washington Mutual at the hearing on April 13, 2006.

[4]Washington Mutual's unimpaired secured claims and arrearage were added back into the Plan which was confirmed.

[5]Adv. No. 04-00128 was filed during the course of the Debtors' prior Chapter 13 case, No. 02-50002-13. That Chapter 13 case was dismissed on September 27, 2005, when Debtors defaulted

4

in Adv. No. 06-00002.  The Court concluded that the claims in Adv. No. 06-00002 arose out of the same nucleus of facts as the claims in Adv. No. 04-00128, so was part of the same transaction litigated in the first adversary proceeding and part of the same claim[6].  No appeal was taken from the Judgment, and Adv. No. 06-00002 was closed on February 21, 2007[7].

As part of the Memorandum and Order entered in Adv. No. 06-00002, Debtors' objection to Proof of Claim No. 4 was overruled and the claim was allowed.

The Chapter 13 Trustee moved to modify the Plan on February 8, 2007, to extend the period to refinance their home to 36 months, but later withdrew the motion to modify and moved to dismiss on March 1, 2007, after Deutsche Bank[8], represented by Charles E. Hansberry filed an objection (Doc. Nos. 64/65/66).  Debtors substituted Caughron for M. Penny Leatzow as their attorney, and Leatzow was allowed to withdraw as Debtors' attorney by Order entered March 20, 2007.

Caughron filed a second motion to modify the Plan on April 1, 2007, seeking to extend the time to refinance to 60 months and pay Washington Mutual in full, and filed another amended Plan on May 10, 2007.  The Trustee filed objections to confirmation and another motion to dismiss.  Deutsche Bank filed objections to confirmation of the second

---

on the terms of their modified Chapter 13 Plan, and also failed to comply with an Order of this Court.  Adv. No. 04-00128 was dismissed with prejudice.

[6]Deutsche Bank's second motion for summary judgment and motion to transfer jury trial were denied as moot.  Memorandum, p. 14.

[7]Debtors' prior attorney M. Penny Leatzow thereafter withdrew as Debtors' attorney in Adv. No. 06-00002.

[8]Deutsche Bank's objection, Doc. No. 90, states that Washington Mutual is its loan servicing agent.

5

postconfirmation amended Plan, objecting to the Plan's term to refinance and to the provisions requiring Washington Mutual to provide a payment history to credit reporting agencies. Debtors filed a further addendum to their proposed modified Plan on June 6, 2007. The hearing on modification was scheduled for July 12, 2007, and then continued to August 16, 2007.

Deutsche Bank filed an amended Proof of Claim No. 6 on June 28, 2007, stating its claim in the amount of $149,787.48 secured by real estate valued at $300,000. The attachment, Ex. C-1, to Proof of Claim No. 6 compares its accounting with the accounting in Proof of Claim No. 4, and changes the arrearage to $71,286.96 and the number of months in arrears to 56 payments as of 6/26/2007. Deutsche Bank filed a notice of amendment (Doc. No. 97) of the Proof of Claim on June 27, 2007, explaining errors in Washington Mutual 's original Proof of Claim and how Deutsche Bank corrected those errors in Proof of Claim No. 6. No subsequent objection has been filed to date by the Debtors to allowance of Proof of Claim No. 6.

On August 15, 2007, Deutsche Bank and the Debtors filed a Stipulation to Amended Proof of Claim (Doc. No. 106) (the "Stipulation"), signed by their respective counsel, which the Court approved by Order entered on August 16, 2007, allowing Proof of Claim No. 6 according to the Stipulation. The Stipulation notes that Washington Mutual's original Proof of Claim was incorrect with respect to prepetition amounts and Deutsche Bank's Proof of Claim No. 6 corrected the errors, and Deutsche Bank agreed to further adjust amounts and write off certain charges. Exhibit A filed with the Stipulation set the total debt in the amount of $140,000.00 as of 8/8/2007, a write-off of more than $10,000, set the arrears in the total amount of $60,758.90 from 57 payments in arrears, an increase from $59,072.28.

On June 27, 2007, Hansberry on behalf of Deutsche Bank filed the instant Application

6

seeking $35,529.25 in attorney fees and costs in the amount of $4,582.28, for services and costs commencing 1/25/2006 through 5/29/2007. Debtors filed an objection to the Application on July 12, 2007, without stating any specific grounds for their objection, and set the Application for hearing on August 16, 2007. Caughron appeared at the hearing but called no witnesses. Hansberry appeared in support of the Application. The Court entered an Order after the hearing on August 20, 2007, granting Debtors time to file a substantive response, which Debtors filed on August 27, 2007 (Doc. No. 112) requesting an evidentiary hearing. Hanberry filed a reply brief (Doc. No. 97) on September 7, 2007, and set the Application for another hearing on September 11, 2007. Hansberry also filed a list of witnesses and exhibits for the hearing

Hansberry and Caughron appeared at the September 11, 2007, hearing, but the Debtors did not attend. No testimony or exhibits were admitted. Caughron advised the Court that he had not seen[9] Hansberry's reply brief, and had not spoken with his clients. The Court heard argument of counsel on the Application, after which the Court took the Application under advisement at the hearing and ordered the Chapter 13 Trustee's motion to dismiss held in abeyance until the Application was ruled on. The Trustee filed a supplemental motion to dismiss on September 18, 2007, which the Court granted on October 2, 2007, and dismissed the case. Debtors filed a motion to reinstate the case to which the Trustee filed a conditional consent. Deutsche Bank filed an objection. The matter was heard on November 13, 2007, at which the Court granted Debtors' motion and reinstated this case. Deutsche Bank's Application was taken back under

---

[9]The Court's CM/ECF system reflects that notice of Deutsche Bank's reply brief was electronically mailed to Caughron at his e-mail address of record, "notice@debtrelieflawpllc.com" on September 7, 2007, a Friday. The second hearing was held on the following Tuesday. If Caughron did not see Deutsche Bank's reply brief it is because he did not check the case docket, did not check his emails, and did not review or update his copy of the hearing calendar for September 11, 2007.

advisement, and is ready for decision.

## CONTENTIONS OF THE PARTIES

Deutsche Bank's Application seeks fees for attorneys, paralegals and interns in the total amount of $35,529.25 and costs of $4,582.28 incurred from January 25, 2006, through May 29, 2007, based on the language of the note and deed of trust, incurred in this bankruptcy case and defending Deutsche Bank and Washington Mutual in Adv. No. 06-00002, wherein Debtors sought damages and to rescind the note and deed of trust, and not for any judicial or nonjudicial foreclosure proceedings.

Debtors' brief in opposition to Deutsche Bank's Application argues that Debtors are entitled to mandatory attorney fees and costs from Deutsche Bank under provisions of TILA, 15 U.S.C. § 1640(a)(3), based on their complaint in Adv. No. 06-00002, and that Deutsche Bank is not entitled to attorney fees and costs under TILA. Debtors argue that they were "successful" in their action, and therefore entitled to attorney fees and costs under TILA, based on the Stipulation with Deutsche Bank (Doc. No. 106) wherein it overstated its fees and costs in the original Proof of Claim. Second, Debtors argue that Deutsche Bank waived its claim for attorney fees and costs in Adv. No. 06-00002 by failing to put Debtors on notice in its responsive pleading in Adv. No. 06-00002 of Deutsche Bank's claim for attorney fees and costs as "special damages" as required by Fed. R. Civ. P. 9(g), and further that it waived its claim for attorney fees and costs by not filing its Application in the main case for more than six months. Third, Debtors argue that the judgment in Adv. No. 06-00002 is final and binding, so Deutsche Bank waived its claims for attorney fees and costs by not raising them in Adv. No. 06-00002 or seeking amendment of the Judgment. Fourth, Debtors argue that Deutsche Bank's requested fees are not reasonable under

8

11 U.S.C. § 330(a) because Deutsche Bank unreasonably refused to negotiate with Debtors' attorneys Leatzow and Caughron. Debtors now request an evidentiary hearing[10] where they can provide testimony to establish the unreasonableness of Deutsche Bank's requested fees and costs.

Deutsche Bank's reply brief states that it filed its Application for fees and costs pursuant to applicable Rules, F.R.B.P. 2016 and Mont. LBR 2016-1. Deutsche Bank argues that under 15 U.S.C. § 1610 TILA does not void its contractual rights to attorney fees and costs under the note and deed of trust. Deutsche Bank argues that Debtors were not successful claimants under TILA, and that Debtors are not entitled to attorney fees and costs under 15 U.S.C. § 1640(a)(3) unless they obtained damages or rescission under TILA, citing *McDonald v. Checks-N-Advanced (In re Ferrell)*, 358 B.R. 777, 793 (9th Cir. BAP 2006), and not for claim objection litigation. Instead, Deutsche Bank argues, Debtors accomplished none of their TILA goals or remedies by judgment or settlement, and Deutsche Bank's agreement to write off charges and interest which were incurred after loan origination, while TILA addresses disclosure and rights at the time of loan origination.

Deutsche Bank contends that it did not refuse to participate in settlement negotiations and tried to engage the Debtors in settlement negotiations, at which point its attorney fees and costs were less than half of what it seeks in the instant Application, but that Debtor's counsel would not engage[11] except to refuse Deutsche Bank's offer. Deutsche Bank agreed to write off certain charges in the main bankruptcy case, after summary judgment was entered and the TILA claims

---

[10]This second hearing was scheduled and held on September 11, 2007. Caughron appeared for the Debtors but offered no witness testimony or exhibits.

[11]In spite of holding two hearings on this Application, neither side offered any testimony or exhibits relating to settlement negotiations, but they are reflected in entries in Hansberry's billing statement at pages C-12 through -14.

in Adv. No. 06-00002 were dismissed, simply to move this matter closer to a cost-effective resolution. Deutsche Bank points out that Debtors' argument that it refused to negotiate contrasts with the existence of an actual Stipulation between the parties, Doc. No. 106.

Deutsche Bank argues that it did not waive its ability to recover attorneys' fees and costs by failing to plead them as special damages under Rule 9(g), because it was a defendant and sought no damages, citing *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 26 (1st Cir. 2004) (Defendant's claim for attorney fees as prevailing defendant is governed by Fed. R. Civ. P. 54(d)(2), not Rule 9(g)), and that since F.R.B.P. 7054 incorporates only Rule 54(a) through (c) in adversary proceedings, F.R.B.P. 2016 applies for awarding fees. Deutsche Bank argues that Rule 2016 contains no time limit so its Application should not be time-barred as it was filed only four and a half months after final judgment in Adv. No. 06-00002.

Deutsche Bank argues that it did not voluntarily or knowingly waive a known right except by the brief delay in filing its Application, and argues that laches is not supported by unreasonable delay or a showing that the delay caused prejudice against Debtors. Deutsche Bank concludes that Debtors initiated Adv. No. 06-00002 and made decisions which resulted in the matter not settling, and that Deutsche Bank incurred the fees and costs sought in the Application and they should be awarded.

## DISCUSSION

In a unanimous decision in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* __ U.S. __, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007), the United States Supreme Court earlier this year abrogated the holdings stated in *Fobian v. West. Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153 (9th Cir. 1991), and *DeRoche v. Ariz. Industrial Comm. (In re*

10

*Deroche)*, 434 F.3d 1188, 1191 (9th Cir. 2006), which had provided: "[W]here the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party." In abrogating the *Fobian* holding the Supreme Court wrote: "The character of a contractual obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy." __ U.S. __, 127 S.Ct. at 1206. Deutsche Bank's Application is based on its contractual rights under the note and deed of trust.

The Local Rules for the United States Bankruptcy Court for the District of Montana ("Mont. LBR") 2016-1(d) (effective December 1, 2001) provides that if oversecured creditors wish to recover reasonable fees or costs pursuant to 11 U.S.C. § 506(b) as a portion of the allowed secured claim, their professionals must file a fee application. Rule 2016(a) of Federal Rules of Bankruptcy Procedure provides in pertinent part at the next to last sentence: "The requirements of this subdivision shall apply to the application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity."

A creditor has the burden of proof to establish the reasonableness of fees and costs pursuant to 11 U.S.C. § 506(b) or other appropriate statute. *In re Ransom*, 361 B.R. 895, 898 (Bankr. D. Mont. 2007); *In re Staggie*, 255 B.R. 48, 51-2 (Bankr. D. Idaho 2000); *Kord Enterprises II v. Cal. Commerce Bank (In re Kord Enterprises II)*, 139 F.3d 684, 687 (9th Cir. 1998). In *Ransom*, this Court noted that notwithstanding LBR 2016-1's requirement that an application be filed and that an application may more adequately provide necessary information, a creditor may be able to disclose prepetition and postpetition fees and costs in a proof of claim provided it includes necessary documentation and itemization to establish the reasonableness of

the fees and costs. 361 B.R. at 902, citing *Atwood v. Chase Manhattan Mortgage Co.*, 293 B.R. 227, 231-32 (9th Cir. BAP 2003).

The Court heard and decided the Debtors' objection to Proof of Claim No. 4 together with Adv. No. 06-00002. The pending Application includes fees and costs incurred by Hansberry and the Garlington firm both in the main case and in Adv. No. 06-00002. Therefore, the Court begins by rejecting Debtors' contentions that Deutsche Bank waived its claim for attorney fees and costs by not raising them in Adv. No. 06-00002, either as special damages in its answer, or by failing to file an application in the adversary proceeding before it was closed. This Court agrees with the First Circuit in *Flynn v. A.K. Peters*, 377 F.3d at 26, that Debtors' argument that attorneys' fees sought by a prevailing defendant are "special damages" within the meaning of Rule 9(g) is a "novel argument". As in *Flynn*, Debtors fail to cite any authority demonstrating that Deutsche Bank must prove its right to attorney fees under § 330(a)(3) and Rule 2016 as a special element of damages in an adversary proceeding, rather than the main case. The Court is unaware of any authority supporting the Debtors' contention, and it runs contrary to the structure of the Bankruptcy Code and Rules and established practice as discussed in *Ransom.*

Section 330 governing compensation is in Chapter 3 of the Code entitled "Case Administration". Rule 2016 is in Part II of the Federal Rules of Bankruptcy Procedure governing administration and attorneys, and claims for attorney fees for creditors are not listed in the scope of adversary proceedings under F.R.B.P. Rule 7001. The Court concludes Deutsche Bank did not waive its claim for attorneys' fees and costs by not pleading them as special damages in Adv. No. 06-00002, or by not filing the Application in the adversary proceeding before it was closed.

Next, the Court considers and rejects Debtors' contention that Deutsche Bank's

12

Application is barred by waiver and laches based on its delay in filing its Application on June 27, 2007. At the time of the Application the main case was still open, Debtors were in default of the confirmed Plan and modification of Debtors' Plan was pending so Deutsche Bank was and is continuing to incur attorney fees and costs. The Judgment was entered in Adv. No. 06-00002 on February 6, 2007, so less than five months had elapsed when Deutsche Bank filed its Application. Rule 2016 and LBR 2016-1(d) contain no time limit for filing an application, and the Court sees no reason to impose or infer a deadline, especially in an active case where the creditor continues to accrue fees and costs. Deutsche Bank's Application is not barred by waiver or laches.

Next, Debtors argue that they entitled to mandatory attorney fees and costs from Deutsche Bank under § 1640(a)(3) of TILA, and that Deutsche Bank is not entitled to attorney fees and costs, because Debtors were "successful" in Adv. No. 06-00002 and therefore entitled to attorney fees and costs based on the Stipulation they reached with Deutsche Bank filed in the main case (Doc. No. 106) wherein it overstated its fees and costs in the original Proof of Claim. Debtors' claim of success in Adv. No. 06-00002 is burdened by the inconvenient fact that summary judgment was entered against them in Adv. No. 06-00002 dismissing all their claims, including their TILA claims, and overruling their objection to Proof of Claim No. 4. The Stipulation was filed in the main case, not the adversary proceeding, and involved the claims allowance process under 11 U.S.C. § 502, not TILA. Debtors' contention that they are the successful party entitled to attorney fees under TILA is without merit.

Debtors' claim for attorney fees under § 1640(a)(3) of TILA further suffers from the same alleged defect based upon which they argue Deutsche Bank's Application should be denied, i.e.,

13

it was not filed in Adv. No. 06-00002. Debtors have not moved to reopen Adv. No. 06-00002 to amend the judgment and request attorney's fees and costs based on the Stipulation reducing Deutsche Bank's claim. Such an effort would likely fail, because 11 U.S.C. § 1640(a)(3) is limited to damages for liability established under TILA, and provides specifically:

> (3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have the right of rescission under section [26 USCS § 1635], the costs of the action, together with a reasonable attorney's fee as determined by the court

*Ferrell*, 358 B.R. at 792-93.

Debtors' were not successful in establishing liability against Deutsche Bank under TILA in Adv. No. 06-00002, or on their claim for rescission based on fraud. Summary Judgment was entered in Adv. No. 06-00002 dismissing Debtors' TILA complaint with prejudice on February 6, 2007. No appeal was taken from that Judgment and it is final, and Debtors have not moved to alter or amend the Judgment based on the Stipulation.

The Ninth Circuit in *Semar v. Platte Valley Federal S & L Ass'n.*, 791 F.2d 699, 703 n.10, 706 (9th Cir. 1986) notes that creditors are liable for a reasonable attorney's fee when borrowers obtain rescission under 15 U.S.C. § 1640(a)(3). However, the Debtors in the instant case did not obtain rescission of their note, or any other relief under TILA, in Adv. No. 06-00002. The Court does not consider Deutsche Bank's concessions in the Stipulation regarding its allowed claim to in any way constitute an admission of liability or rescission under TILA which would give Debtors the right to seek attorney's fees under § 1640(a)(3).

Debtors cite *Buckhannon Board and Carehome, Inc. v. West Virginia Department of Health and Human Services*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) for the proposition that consumers can recover their attorney fees and costs even where the case is

14

settled. For a number of reasons, *Buckhannon* lends no support to Debtors' contentions.

First, in *Buckhannon* the petitioners requested attorney's fees as the "prevailing party" under the Fair Housing Amendments Act of 1988 ("FHAA"). The Supreme Court explained that "prevailing party" is "a legal term of art," also termed "successful party," meaning a party in whose favor a judgment is rendered or one who has been awarded some relief by the court. *Buckhannon*, 598 U.S. at 603, 121 S.Ct. at 1839. Citing the "American Rule," the Court explained that ordinarily parties are required to bear their own attorney fees and the prevailing party is not entitled to collect from the loser absent explicit statutory authority, which Congress authorized in FHAA, the Civil Rights Act of 1964, the Voting Rights Act Amendments of 1976, employing the term "prevailing party." *Buckhannon,* 598 U.S. at 602-03, 121 S.Ct. at 1839; *Alyeska Pipeline Service Co. V. Wilderness Society*, 421 US. 340, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The Ninth Circuit applied *Buckhannon* to 42 U.S.C. § 1988, in *Benton v. Oregon Student Assistance Com'n.*, 421 F.3d 901, 906 n.3 (9th Cir. 2005).

In contrast, Debtor's claim for attorney fees is based on a subsection from TILA which does not include the term of art "prevailing party" or even "successful party." Rather, § 1640(a)(3) allows a reasonable attorney fee "in the case of a successful action." No case law was cited that applies *Buckhannon* to TILA. This Court deems the absence of the term of art "prevailing party" from § 1640(a)(3) to be not insignificant, and views *Buckhannon* as no support for Debtors' claim for attorney fees or for any of their contentions.

Language is contained in *Buckhannon* construing precedents which "establish that enforceable judgments on the merits and court-ordered consent decrees create 'the material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees."

532 U.S. at 604, 121 S.Ct. at 1840. Even this language is of no support for Debtors' contentions. First, neither an enforceable judgment on the merits nor a court-ordered consent decree was issued in Debtors' favor in Adv. No. 06-00002. The Stipulation was entered into and filed after the adversary proceeding was dismissed and closed.

Second, the Stipulation does not alter the legal relationship between the parties. By its terms the Stipulation "is intended only to address prepetition amounts identified on the amended proof of claim" and specifically "is not a waiver" of Deutsche Bank's Application. Deutsche Bank remained a creditor of the Debtors under the note and deed of trust. While the Court approved the Stipulation and bound the parties to its terms, it allowed Deutsche Bank's amended Proof of Claim pursuant to the Stipulation, and thereby preserved and fixed their legal relationship. The Court finds that the Stipulation did not create the "material alteration of the legal relationship of the parties" necessary to award Debtors any fees under TILA § 1640(a)(3) based upon the holding in *Buckhannon,* 532 U.S. at 604, 121 S.Ct. at 1840.

The Ninth Circuit construed *Buckhannon* in *Benton v. Oregon Student Assistance Com'n*, 421 F.3d 901, 906-07 (9th Cir. 2005) and interpreted it as follows: "The Supreme Court determined that a plaintiff who does not secure a judgment on the merits 'but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct' is not a 'prevailing party' for purposes of awarding attorney's fees." *Benton*, 421 F.3d at 907, quoting *Buckhannon*, 532 U.S. at 600, 121 S.Ct. at 1838. Deutsche Bank's entry into the Stipulation was voluntary, and in no way can it be interpreted as achieving Debtors' desired result for damages and rescission under TILA. The Court finds no merit in Debtors' contentions that they are entitled to attorney fees and costs as a successful party under

16

TILA based on the Stipulation with Deutsche Bank.

Turning to the Application, this Court has long been obligated to review each request for fees and costs to determine whether the applicant provided:

1. a description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;
2. the date each service was provided;
3. the amount of time spent performing each task; and
4. the amount of fees requested for performing each task.

*See, In re WRB-West Associates*, 9 Mont. B.R. 17, 18-20 (Bankr. D. Mont. 1990).

Section 330(a)(3) of the Code provides that in determining the amount of reasonable compensation to be awarded to a professional person, the court "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time the services were rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

11 U.S.C. § 330(a)(3). After review of the Application and billing statement, and review of the docket in this case and Adv. No. 06-00002, and consideration of the relevant factors in § 330(a)(3), the Court finds that, with certain exceptions discussed below, Hansberry and the Garlington firm have provided adequate detail to enable this Court to undertake its independent investigation.

17

The Application at page 3 identifies Hansberry and other attorneys, their years of experience and billing rates, provides the names of paralegals and their billing rates, and indicates a law clerk/intern with a billing rate. The billing statements indicate the dates of the costs and services, initials of the person providing the service, hourly units, billing rates and amount for each entry. The billing statements show services commencing 2/22/2006 through 5/29/2007, beginning on page C-9, and costs first incurred on 1/25/2006. Costs are further broken down to "Soft Costs" for long distance telephone charges, photocopies and supplies, totaling $300.92; and "Hard Costs" for computerized legal research, meals, mileage and federal express charges totaling $4,281.96.

One charge under "Hard Costs" dated 10/9/2006 for $250.00 on page C-8 described as: "Professional Services: Requested Fees on Motion to Compel 10/9/06", is clearly for services not costs. Professional fees related to the motion to compel dated 10/9/2006 also are included at page C-15 in two entries dated 10/9/2006 totaling $352.00. The Court disallows the $250.00 charge on page C-8, since it is plainly marked as fees which are requested on page C-15, and appears to be an instance of double billing[12].

The billing statements include numerous instances of lumping services together in daily totals, instead of itemizing each task separately as required by Mont. LBR 2016-1(a) which provides in pertinent part:

> Professional fees shall be documented through contemporaneous billing records. Each task shall be itemized separately, identifying the task performed, the amount of time involved, and the fee for each time entry. The Court may deny compensation for tasks which are lumped together in one entry if the cumulative time for those tasks exceeds one

___

[12]Hansberry filed on October 9, 2006, a response to Debtors' motion to compel in Adv. No. 06-00002 (Doc. No. 28), but that did not generate or incur a filing fee or cost.

18

hour.  Lumping shall be permitted for cumulative tasks which do not exceed one hour.

The lumping begins at the bottom of page C-9 with an entry by Hansberry (CEH) dated 2/28/2006 listing several tasks lumped together[13] in a 2.0 hour entry and $320 total fee. Hansberry listed seven other lumped entries dated:  3/2/2006 (2.1 hours and $336); 3/9/2006 (2.5 hours and $400); 3/10/2006 (2.2 hours and $352); 4/6/2006 (1.6 hours and $256); 4/12/2006 (1.1 hours and $176.00); 5/2/2006 (3.0 hours and $480); and 5/5/2006 (1.8 hours and $288.00).  Page C-12 at the top lists a final instance of lumping by the law clerk (LC) dated 6/4/2006 (4.0 hours and $200 billed at $50/hr) for researching and drafting[14].  Hansberry's eight lumped daily entries total 16.3 hours and $2,608.00.  Pursuant to LBR 2016-1(a), the Court will allow Hansberry one hour of fees for each of his eight lumped entries, a total of $1,280.00, and allows $50.00 for one hour for the law clerk's lumped entry on 6/4/2006.  The Court disallows $1,328.00 of Hansberry's fees and $150.00 of the law clerk's fees for lumping in violation of LBR 2016-1(a), a total of $1,478.00 is disallowed for lumping.  On page C-12 of the billing statement Hansberry began to provide the amount of time for each task entry[15] with the entry dated 7/26/2006, and thereafter.

The Court's obligation to review fee applications applies to applications submitted under § 506(b) which provides:

---

[13]The 2/28/2006 entry on C-9 describes a teleconference, legal research, reviewing file and pleadings, revising answer and another teleconference.  There is no breakdown of the amount of time involved for each task and the fee for each time entry as required by LBR 2016-1(a).  The subsequent lumped entries identified above reflect similar violations of LBR 2016-1(a).

[14]This entry is the subject of discussion below on excessive research.  Notwithstanding, the Court deems it appropriate to reduce the entry for lumping in violation of LBR 2016-1(a).

[15]LBR 2016-1(a) also requires the fee for each time entry, and that requirement still was not met.  However, the Court deems the amount of fees already disallowed to be an adequate sanction.

19

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement[16] under which such claim arose.

The Ninth Circuit construed 11 U.S.C. § 506(b) in *Kord*, 139 F.3d at 687, 689:

Both parties agree that the Bank was an oversecured creditor and thus came within the purview of § 506(b). The language of that section is clear. The creditor is entitled to attorneys' fees if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement. *See, e.g., Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.)*, 151 B.R. 931, 935 (9th Cir. BAP 1993); *Meritor Mortgage Corp., West v. Salazar (In re Salazar)*, 82 B.R. 538, 540 (9th Cir. BAP 1987).

Three of the four *Kord* requirements are not at issue. Of the *Kord* factors Debtors contest only the reasonableness of Deutsche Bank's request. Based on the Stipulation and Order approving the Stipulation Deutsche Bank has an allowed secured claim. Consideration of the allowed claim with Debtors' Schedules establishes that Deutsche Bank is oversecured, and no suggestion exists in the record to the contrary. The note and deed of trust provisions set forth above establish the fourth requirement that the fees are provided for under the agreement.

Debtors' contend that Deutsche Bank's requested fees are not reasonable because Deutsche Bank unreasonably refused to negotiate with Debtors' attorneys Leatzow and Caughron. In light of the Stipulation filed and approved on August of 2007 that contention appears at first glance at odds with the record. Hansberry's billing statement shows beginning on page C-12 and 8/22/2006, through 10/2/2006 on page C-14, several

---

[16]The amendments made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") (Pub. L. 109-8), effective October 17, 2007, added the words "or State statute" after "agreement" in § 506(b). The amendment does not apply in the instant case as the petition was filed on October 14, 2005.

entries showing Hansberry engaged in tasks related to settlement with the Debtors.

What constitutes "reasonable attorney's fees" is discussed in *In re Hungerford,* 19

Mont. B.R. 103, 136-138 (Bankr. D. Mont. 2001), *quoting In re Huhn*, 145 B.R. 872, 876

(Bankr. W.D. Mich. 1992):

> Pursuant to Bankruptcy Code § 506(b), a secured creditor is allowed only "reasonable attorney fees".  In making a fee determination, the court must consider not only the fee agreement, but the overall fairness and reasonableness of the fee under all of the circumstances. *In re K-Fab, Inc.*, 118 B.R. 240, 242 (Bkrtcy.M.D.Pa.1990) (*citing Lund v. Affleck*, 587 F.2d 75 (1st Cir.1978)).
>
> "Reasonable" fees are those necessary to the collection and protection of a creditor's claim.  *In re PCH Assoc.*, 122 B.R. at 204; *In re Kroh Bros.*, 105 B.R. at 521.  They include fees for those actions which a similarly situated creditor might have taken.  *In re Riker*, 122 B.R. at 970.
>
> In *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 169 (Bkrtcy.S.D.N.Y.1985), the court held that "it is inherently unreasonable to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved." (quoted with approval in *In re Rubenstein*, 105 B.R. at 203; *In re Kroh Bros.*, 105 B.R. at 521).
>
> An oversecured creditor is not entitled to compensation for its attorneys' fees for every action it takes by claiming that its rights have been affected.  *In re Kroh Bros.*, 105 B.R. at 521.  "[W]here services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)."  *In re Riker*, 122 B.R. at 973 (*quoting In re Wonder Corp. of America*, 72 B.R. 580, 591 (Bkrtcy.D.Conn.1987), *aff'd*, 82 B.R. 186 (D. Conn. 1988)).

*See also In re Digital Products Corp.*, 215 B.R. 478, 482 (Bankr. S.D. Fla. 1997).

The billing statement includes six (6) entries of "LC" for services described as

"SOL research" beginning 5/25/2006 on page C-11 and ending on 6/5/2006 including

drafting a memorandum of statute of limitations for Debtors' claims.  The fifth entry

dated 6/4/2006, is described as "Begin legal research" even through LC had been

21

researching the SOL issue for more than a week and 23.6 hours prior to the 6/4/2006 entry. The total for these 6 entries is 27.6 hours and $1,380 in fees, which this Court finds excessive and not reasonable, and suggests a lack of oversight, supervision or guidance of the law clerk's research. The Court deems it appropriate in its discretion under § 506(b) to disallow one-half, or $690.00, of the legal research and drafting entries for LC dated 5/26/2006, and disallows the $886.32 in computerized research costs for June 2006. This adjustment reflects an appropriate balance between allowing for a reasonable amount of research and protecting against excessive billing.

With respect to the reasonableness of the remainder of Deutsche Bank's fees and costs requested in the Application, the Court finds and concludes after review of the docket in the main case and Adv. No. 06-00002, that the remainder of fees and costs are reasonable under all the circumstances and were to the collection and protection of its claim. *Hungerford,* 19 Mont. B.R. at 136-138; *In re Huhn*, 145 B.R. at 876.

The Debtors objected to allowance of Washington Mutual's Proof of Claim in this case, wrote its claim completely out of one of their amended Plans, and sought rescission and damages against Deutsche Bank and other defendants for TILA violations in Adv. No. 06-00002. This case was the second bankruptcy case recently filed by the Debtors, and Adv. No. 06-00002 was the second adversary proceeding against the secured creditor threatening its secured claim. Debtors forced Deutsche Bank to incur the fees and costs reflected in the instant Application by their own actions against Deutsche Bank's claim. Even so, Hansberry's Application requests fees commencing on February 22, 2006, more than four months after the petition date.

22

The Court concludes that Deutsche Bank's request for fees and costs, as adjusted above, is reasonable and that Deutsche Bank has satisfied its burden under § 506(b) for an award of attorney fees and costs in its Application, except for $2,018.00 in fees and $886.32 in costs disallowed.

**IT IS ORDERED** a separate Order will be entered in conformity with the above: (1) overruling the Debtors' objections (Doc. Nos. 101, 103 and 112) in part and sustaining them in part, and denying Debtors' request for attorneys fees and costs under TILA filed on September 7, 2007 (Doc. No. 112); (2) approving in part the Application for Professional Fees and Costs ("Application") filed on June 27, 2007, (Doc. No. 98) by Charles E. Hansberry of Garlington, Lohn & Robinson, PLLP, attorneys for secured creditor Deutsche Bank and awarding Deutsche Bank reasonable fees for Hansberry and Garlington, Lohn & Robinson, PLLP, in the amount of $33,511.25 and reimbursement for costs in the amount of $3,695.96, as part of Deutsche Bank's allowed claim pursuant to 11 U.S.C. § 506(b); (3) granting the Debtors' ten (10) days to file a further amended Chapter 13 Plan, and setting the hearing on confirmation of Debtors' amended Plan at Missoula on Thursday, January 10, 2008, at 10:00 a.m.

BY THE COURT

Ralph B Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

23

24